UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
KEVIN GRIER,

                              Plaintiff,                  Case No.: 23 Civ. 3912

          -against-

                                              **COMPLAINT FOR**
                                              **INJUNCTIVE AND**
HYUN CHIN KIM, in her capacity as statutory licensing    **DECLARATORY RELIEF**
officer pursuant to Penal Law 265.00(10); 400.00, *et seq.*

                               Defendant.
------------------------------------------------------------------x

    Plaintiff, KEVIN GRIER, by his attorneys The Bellantoni Law Firm, PLLC, for his

Complaint for, *inter alia,* Injunctive and Declaratory Relief, respectfully states:

**NATURE OF THE ACTION**

    1.    This is an action for declaratory, injunctive, and other relief, to include presumed

monetary damages in at least a nominal amount, costs, disbursements, and reasonable statutory

attorney's fees pursuant to 42 U.S.C. § 1988, for continuing irreparable harm to Plaintiff arising

from violations to his constitutional rights as protected by the Second and Fourteenth Amendments

to the United States Constitution. 42 U.S.C. § 1983.

**JURISDICTION AND VENUE**

    2.    Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action

arises under the United States Constitution and laws of the United States, and under 28 U.S.C. §

1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes,

ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or

immunities secured by the United States Constitution. This action also seeks relief pursuant to 28

1

U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983, § 1988. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

3.      Kevin Grier (hereinafter "Plaintiff") is a citizen of the United States and a resident of Orange County, State of New York.

4.      Hyun Chin Kim ("Judge Kim") sued herein in her official capacity only was, at all times relevant to this proceeding, a statutory handgun licensing officer for Orange County pursuant to Penal Law § 265.00(10) and, in that connection, authorized to issue licenses pursuant to Penal Law § 400.00, *et seq.*

## CONSTITUTIONAL FRAMEWORK

5.      The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

6.      The Second Amendment codifies a "preexisting right."

> "[I]t has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right.
>
> The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed."
>
> As we said in *United States v. Cruikshank* …[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed ...."[1]

---

[1] *Heller*, at 592 (emphasis supplied) quoting, *United States v. Cruikshank*, 92 U.S. 542, 553 (1876) (quotation marks omitted).

2

7.      The Second Amendment right of "the people…unambiguously refers to all members of the political community, not an unspecified subset." *D.C. v. Heller*, 554 U.S. 570, 580 (2008).

> " '[T]he people' seems to have been a term of art employed in select parts of the Constitution .... [Its uses] sugges[t] that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."

*Heller*, at 580 quoting *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990).

8.      The Fourteenth Amendment provides, in pertinent part: No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV.

9.      The Second Amendment *presumptively* protects the right to possess and carry all weapons in common use for self-defense. *Bruen*, at 2132 ("even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense") citing, *Caetano v. Massachusetts*, 577 U.S. 411, 411–412 (2016) (per curiam) (stun guns).

10.     Handguns are weapons in common use for self-defense and are protected within the scope of the Second Amendment.  *D.C. v. Heller,* 554 U.S. 570, 628 (2008) (recognizing handguns to be "an entire class of 'arms' that is overwhelmingly chosen by American society for that lawful purpose [self-defense].").

11.     In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court reiterated the text, history, and tradition standard of reviewing Second Amendment challenges, consistent with *Heller*, *McDonald*[2], and *Caetano*.[3]

12.     Flatly rejecting the 'interest balancing' 'intermediate scrutiny' test created by the Second Circuit (and others), the *Bruen* Court laid out a clear path to determine the constitutionality of government regulations affecting the Second Amendment: "We reiterate that the standard for applying the Second Amendment is as follows:

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.
>
> The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Bruen*, at 2126. ("In sum, the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny.") (emphasis added) (citation omitted).

13.     Where later history contradicts what the text says, the text controls. *Bruen*, at 2137.

---

[2] *McDonald v. Chicago*, 561 U.S. 742 (2010).

[3] "But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, at 2127. See also, *Caetano*,

*Supreme Court Precedent Rejecting 'Discretion' in the Context of Second Amendment Rights*

14.    Relying on text, history, and tradition, the Supreme Court decisions in *Heller* and

*McDonald* rejected the use of discretion in the context of Second Amendment rights.[4,5]

15.    Likewise, the *Bruen* Court also rebuked the use of discretionary and subjective

factors in firearms regulation, affirmatively rejecting licensing regimes "like New York's" that

"require[e] the appraisal of facts, the exercise of judgment, and the formation of an opinion…"

*Bruen*, 2138 n. 9.

16.    In *Bruen*, the Supreme Court conditioned the continued existence of licensing

regimes like New York on the State's transformation to restricting licensing officials to "only

narrow, objective, and definite standards." *Ibid.*

17.    Likewise, Justice Kavanaugh's concurrence (joined by the Chief Justice) cautioned

the 6 outlier 'may issue' states, of which New York is a member, that their continued

implementation was dependent upon a transition to objective criteria:

> "Going forward, therefore, the 43 States that employ objective shall-issue
> licensing regimes for carrying handguns for self-defense may continue to do so.
>
> Likewise, the 6 States including New York potentially affected by today's
> decision may continue to require licenses for carrying handguns for self-
> defense so long as those States employ objective licensing requirements like
> those used by the 43 shall-issue States."

*Bruen*, at 2162.

---

[4] 19 "The very enumeration of the [Second Amendment] right takes out of the hands of government - even the Third Branch of Government - the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *D.C. v. Heller*, 554 U.S. 570, 634-35 (2008).
[5] *McDonald*, at 790-91 (2010) (rejecting Justice Breyer's idea that incorporation of the 14th Amendment "will require judges to assess the costs and benefits of firearms restrictions and thus to make difficult empirical judgments in an area in which they lack expertise. As we have noted, while his opinion in Heller recommended an interest-balancing test, the Court specifically rejected that suggestion.").

18.     New York State failed to heed the Supreme Court's warning; licensing officers remain empowered with 'broad discretion' to deny applicants who, like Plaintiff, are not prohibited under state or federal law from possessing firearms.[6]

19.     New York failed to restrict its licensing scheme to "only narrow, objective, and definite standards."

20.     New York continues to implement a shall-not-issue-unless[7] licensing scheme that vests "broad discretion" in licensing officers[8], and requires subjective determination and opinions.

21.     In response to the *Bruen* mandate, New York passed the Concealed Carry Improvement Act which, among other restrictions, requires licensing officers to make subjective assessments using their discretion to determine whether an individual is "of good moral character, which …shall mean having the essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others."[9] Penal Law § 400.00(1)(b).

22.     Penal Law § 400.00(1)(b) is the type of subjective factor that requires the "appraisal of facts, the exercise of judgment, and the formation of an opinion" rejected by the *Bruen* Court, and not a "narrow, objective, and definite standard" as required by the Supreme Court. *Bruen,* at 2138, n. 9.

23.     Seeking a discretionary license from the government to exercise the right to possess firearms for self-defense is inconsistent with the plain text of the Amendment.

---

[6] The term "firearms" as used herein refers generally to handguns, rifles, shotguns, and "other firearms."
[7] "**No license shall be issued or renewed** pursuant to this section except by the licensing officer, and then only after investigation and finding that all statements in a proper application for a license are true. **No license shall be issued or renewed except** for an applicant…" N.Y. Penal Law § 400.00(1).
[8] *Franzese v. Ryder*, 200 A.D.3d 979 (2d Dept. 2021) ("A pistol licensing officer has broad discretion in ruling on permit applications"); *Fitzgerald v. McLoughlin*, 198 A.D.3d 760 (2d Dept. 2021) ("broad discretion" to deny application to amend license to add another handgun); *Zeltins v. Cook*, 176 A.D.3d 1574, 1575 (2d Dept. 2019) ("A licensing officer, such as respondent, has broad discretion to grant or deny a permit under Penal Law § 400.00(1)").
[9] Penal Law § 400.00(1)(b).

24.     Seeking a discretionary license from the government to exercise the right to carry firearms for self-defense is inconsistent with the plain text of the Second Amendment.

## MATERIAL FACTS

25.     Plaintiff is a citizen of the United States, a homeowner and resident of Orange County, and part of 'the People' for whom the Second Amendment was codified.

26.     Plaintiff has no disqualifications to the possession, purchase, receipt, or transfer of firearms under state or federal law.

27.     Plaintiff is a law-abiding, contributing member of the community.

28.     Plaintiff owns his home, has been gainfully employed with New York City Transit for over a decade; is licensed through the State of New York as a Real Estate Broker, and is a Certified New York State Foster Parent.

29.     Because possession of a handgun in New York State is a crime[10], Plaintiff applied to a statutory licensing officer in Orange County for the issuance of a handgun license[11] for self-protection.

30.     In July 2021, Plaintiff filed an application for a handgun license with the Orange County Sheriff's Office.

31.     As part of the application process, Plaintiff was fingerprinted and subject to a thorough criminal and mental health background check by the Sheriff's Office, which searched the federal and state databases for any and all events and/or conditions that would disqualify Plaintiff from the right to possess firearms.

32.     Plaintiff passed the national and statewide criminal and mental health background check conducted by the Sheriff's Office.

---

[10] Penal Law 265.00, et seq.
[11] Penal Law 400.00, et seq.

33.     Upon completion of the background investigation, Plaintiff's application was forwarded to Judge Kim in her capacity as a statutory handgun licensing officer for Orange County.

34.     By written decision dated February 21, 2023 (the "Decision"), Judge Kim denied Plaintiff's application for a handgun license. [Exhibit 1].

35.     In denying Plaintiff of the right to possess and/or carry a handgun for self-defense, Judge Kim's Decision was based on "the exercise of the Court's discretion." [Exhibit 1].

36.     Judge Kim relied on Penal Law § 400.00(1)(b) to "appraise facts, exercise judgment, and form an opinion" about whether Plaintiff was worthy of exercising his right to possess and/or carry a handgun for self-defense as guaranteed by the Second Amendment.

37.     The use of discretion when considering a firearms license violates the Second and Fourteenth Amendments. *Bruen*, at 2138, n. 9.

38.     Second Amendment rights are not contingent upon a government official's subjective opinion – the Amendment's ratification was the "very product of an interest balancing by the people" and "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense. It is this balance—struck by the traditions of the American people—that demands our unqualified deference." *Bruen*, at 2131 (citation omitted).

39.     There is also no historical tradition of a governmental barrier to the possession of weapons for self-defense based on petty and/or nominal offenses, traffic infractions, or the subjective opinions of a government official.

40.     The lower courts are "bound to adhere not only to results of cases, but also to their explications of the governing rules of law." *County of Allegheny v. ACLU*, Greater *Pittsburgh Chapter*, 492 U.S. 573, 668 (1989) (Kennedy, J., dissenting); see also *Balintulo v. Daimler AG*, 190 (2d Cir. 2013) (Lower courts are bound and are without authority to "reinterpret" the Supreme

Court's binding precedent); *NLRB v. Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Iron Workers, Local 229, AFL-CIO*, 974 F.3d 1106, 1116 (9th Cir. 2020) ("Lower court judges don't have license to adopt a cramped reading of a case in order to functionally overrule it.").

41.    *Bruen* sanctioned the continuation of licensing schemes in the 43 "shall issue" states because they "contain only narrow, objective, and definite standards guiding licensing officials."[12]

42.    But the *Bruen* Court rejected the "outlier" states, including New York, that enforce "may issue" licensing schemes that "require an appraisal of facts, the exercise of judgment, and the formation of an opinion."[13]

43.    The Supreme Court conditioned the continuation of discretionary licensing schemes, like New York's, on the application of objective licensing criteria.

> "Going forward, therefore, the 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so.
>
> Likewise, the 6 States including New York potentially affected by today's decision may continue to require licenses for carrying handguns for self-defense ***so long as those States employ objective licensing requirements*** like those used by the 43 shall-issue States."

*Bruen*, at 2162.

44.    In spite of *Bruen,* New York continues to implement a discretionary, subjective licensing scheme that requires an "appraisal of facts, the exercise of judgment, and the formation of an opinion"[14] - the exact factors that led to Judge Kim's denial of Plaintiff's application.

---

[12] *Bruen*, at 2138, n. 9.
[13] *Bruen*, at 2138, n. 9.
[14] *Bruen*, at 2138, n. 9.

45.     But Judge Kim was bound to adhere to the Supreme Court's edict in *Bruen* and the plain text of the Second Amendment and apply objective criteria when making determinations on licensing applications – irrespective of the State's unconstitutional licensing scheme.

46.     Objective criteria demonstrate that Plaintiff is eligible to possess and carry firearms – he has no prohibitors under federal or state law to the possession of firearms.

47.     Judge Kim's decision is based entirely on "appraisal of facts, the exercise of judgment, and the formation of an opinion" to reach her conclusion that Plaintiff "does not possess the good moral character necessary as prescribed by Penal Law § 400.00." [Ex. 1].

48.     Plaintiff's conduct – possessing and carrying a handgun for self-defense – is presumptively protected by the Second Amendment.[15]

49.      By depriving Plaintiff of the right to engage in conduct "presumptively protected" by the Second Amendment[16] - the right to possess (keep) and carry (bear) handguns (Arms), Judge Kim violated Plaintiff's Second and Fourteenth Amendment rights.

50.     Plaintiff's fingerprint-based criminal history report, and the Sheriff Office investigation pursuant to Penal Law 400.00(4), bear out the absence of any legal barrier under state or federal law to Plaintiff's possession of firearms.

51.     The absence of any prohibiting events or conditions under state or federal law to the possession of firearms mandates the issuance of a handgun license to Plaintiff.

---

[15] "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, at 2126. "The Court has little difficulty concluding also that the plain text of the Second Amendment protects Koch's and Nash's proposed course of conduct - carrying handguns publicly for self-defense." *Bruen*, at 2119.

[16] "In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, at 2126.

52.     As such, an Order of Mandamus should issue requiring Judge Kim to grant Plaintiff's application for a New York State Pistol License, *nunc pro tunc*, and issue such license within 15 days of this Court's Order.

### AS AND FOR A FIRST CAUSE OF ACTION

53.     Repeats and realleges paragraphs "1" through and including "52".

54.     Under the theory that Judge Hyun Chin Kim violated Plaintiff's rights as protected by the Second and Fourteenth Amendments. 42 U.S.C. § 1983.

### AS AND FOR A SECOND CAUSE OF ACTION

55.     Repeats and realleges paragraphs "1" through and including "54".

56.     Under the theory that Penal Law § 400.00(1)(b) violates the Second and Fourteenth Amendments. 42 U.S.C. § 1983.

WHEREFORE, Plaintiff respectfully requests that this Court issue a Judgment and Order:

- Declaring the "good moral character" factor of Penal Law § 400.00(1)(b) violates the Second and Fourteenth Amendments;

- Preliminarily and permanently striking Penal Law § 400.00(1)(b) as unconstitutional;

- Declaring that the denial of Plaintiff's handgun license application by the Hon. Hyun Chin Kim violated Plaintiff's Second and Fourteenth Amendment rights;

- Directing by Order of Mandamus that Judge Hyun Chin Kim grant Plaintiff's application for a New York State Pistol License, *nunc pro tunc*, and issue such license to Plaintiff within 15 days of this Court's Order;

- Declaring Plaintiff a prevailing party, 42 U.S.C. 1988;

- Awarding damages to Plaintiff in at least a nominal amount;

- Awarding statutory attorney's fees to Plaintiff pursuant to 42 U.S.C. 1988;

- Awarding costs and disbursements to Plaintiff; and

- Awarding such other, further, and different relief as this Court may deem just and proper.

Dated: May 10, 2023
      Scarsdale, New York

                    THE BELLANTONI LAW FIRM, PLLC
                    *Attorneys for Plaintiff*

By:    *Amy L. Bellantoni*
                    Amy L. Bellantoni, Esq.
                    2 Overhill Road, Suite 400
                    Scarsdale, New York 10583
                    abell@bellantoni-law.com